IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMETT J. MANN, | : | |
|     Plaintiff | : | Civil Action No. 1:06-CV-1715 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| JOHN S. BRENNER, DAVE | : | |
| REDSHAW, DON HOYT, ROBERT A. | : | |
| KINSLEY, MATT JACKSON, CITY | : | |
| OF YORK, YORK COLLEGE, | : | |
| REDEVELOPMENT AUTHORITY | : | |
| OF THE CITY OF YORK, STEVEN R. | : | |
| BUFFINGTON, OFFICER WENTZ, | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are three motions to dismiss under Rule 12(b)(6) and/or for a more definite statement under Rule 12(e) filed by Defendants Brenner, Redshaw, Hoyt, Jackson, City of York ("City"), Buffington, and Wentz (Doc. No. 44), Defendant York Redevelopment Authority ("RDA") (Doc. No. 45), and Defendants Kinsley and York College (Doc. No. 49.) The motions have been fully briefed and are ripe for disposition.

### I.   BACKGROUND

The following facts are assumed to be true for the purposes of the motions to dismiss; they remain largely identical to Plaintiff's original complaint. Plaintiff Emmett Mann owned certain real property in York, Pennsylvania. During 2004 and 2005, Plaintiff and York College discussed the possibility of York College purchasing the property; however, they were unable to agree on a sales price, and the negotiations fell through. At some point either during or after these sale discussions, Defendants, led by Defendants Brenner and Hoyt, decided to "use their badges of state authority to acquire [his] property in an unlawful manner thereby reducing the

1

cost [of the property] to private parties for political reasons." One such private party was York College, which "sought to profit from the abuse of government authority through its political connections."

Apparently the City, the RDA, York College, and various named individuals engaged in a "policy and practice of harassment and intimidation" in their efforts to acquire Plaintiff's property at a reduced price. Defendants manipulated building codes and ordinance violations, brought improper (but otherwise unspecified) criminal charges against Plaintiff, attempted to devalue his property in untold ways, and retaliated against Plaintiff for "us[ing] legal process." For example, Defendants Redshaw and Jackson allegedly threatened, harassed, and intimidated Plaintiff by improperly applying building code and other ordinance violations. Defendants Buffington and Wentz allegedly brought "false and baseless criminal and code violation charges" against Plaintiff, and Defendant Wentz "unlawfully entered and searched the plaintiff's home and then carried away personal property items belonging to Plaintiff." Additionally, the City, through its incompetence, damaged Plaintiff's real property.

At some point, Plaintiff's property was declared by the City to be blighted, and the RDA commenced eminent domain proceedings to take the property. Plaintiff vigorously opposed the taking of his property, but his preliminary objections to the taking were denied by the Court of Common Pleas of York County. (Doc. No. 19, Exhibit A.) This decision was upheld, and the eminent domain proceedings in the matter of <u>Emmet J. Mann, et al. v. York City Redevelopment Authority</u>, No. 1253 C.D. 2007 were completed earlier this year.

From these allegations, Plaintiff pursues five § 1983 claims and three state law claims. His constitutional claims are that Defendants: (1) maliciously prosecuted him in violation of the

Fourth Amendment; (2) unlawfully searched his property and seized items of personal property in violation of the Fourth Amendment; (3) retaliated against him when he used "legal process" in violation of the First Amendment; (4) violated his right to procedural due process under the Fourteenth Amendment; and (5) violated his right to substantive due process under the Fourteenth Amendment. The state-law claims Plaintiff asserts are: (1) intentional infliction of emotional distress; (2) fraud; and (3) civil conspiracy.

Plaintiff's first complaint was almost entirely dismissed because it lacked adequate detail to put Defendants on notice of the allegations against them and the events giving rise to those allegations so that they might assert a valid defense. (Doc. No. 34.) Yet, the Court allowed Plaintiff to reassert his claims. Plaintiff has twice amended the complaint since. Before the Court is Plaintiff's third amended complaint. (Doc. No. 43.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court

has recently held that while this standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level'" in order to survive a 12(b)(6) motion to dismiss. Philips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)).

**III.   DISCUSSION**

    **A.   Issue Preclusion/Collateral Estoppel**

Defendants all assert that issue preclusion, also known as collateral estoppel, should prevent Plaintiff's claims from proceeding. Plaintiff responds, with brevity, that issue preclusion does not apply to the claims in his third amended complaint because they "are in no way dependent upon, or derive from, nor do they in any way relate to, the power of the City [of York] or RDA to formally exercise their powers of eminent domain." (Doc. No. 43 ¶ 16.)  While that may be true for certain of Plaintiff's claims, it is not, as a matter of law or logic, true for the Fourteenth Amendment and civil conspiracy claims.

Specifically, Plaintiff alleges that he was denied due process, both procedural and substantive, because Defendants "unlawfully" agreed to "a course of conduct designed to harass and intimidate the [P]laintiff into compliance with their desire to acquire his property for York College." (Doc. No. 43 at 2.) Yet, in Plaintiff Mann's appeal of the decision denying his objections to the taking of 243 and 245 West Springettsbury Avenue, a Court found against Plaintiff on the same issue: "[T]hat the RDA acted in bad faith by acting in consort with York College to obtain the properties as inexpensively as possible . . .[w]e find such argument to be without merit." (Doc. No. 19, Exhibit A at 12.)

"Traditionally, courts have required the presence of four factors before collateral estoppel may be applied: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Henglein v. Colt Industries Operating Corp., 260 F.3d 201, 209 (3d Cir. 2001) (citing Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995). Plaintiff argues that the "identity of issues" prong is the one lacking; he makes no other arguments against the application of issue preclusion.

The Third Circuit stated that "[t]o defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'" Raytech, 54 F.3d at 191. Judge Dorney specifically found that "the Condemnees have not demonstrated that the purpose [of the RDA and city of York's actions leading up to the taking] was something other than the elimination the [sic] blighted structures; the fact that the property may end up in the hands of a private entity is immaterial." (Doc. No. 19, Exhibit A at 12.) Judge Dorney's precise and limited role in review of the taking was to determine "whether the condemnor [was] guilty of fraud, bad faith, or ha[d] committed an abuse of discretion." (Doc. No. 19, Exhibit A at 12); accord Downingtown Area School Dist. v. DiFrancesco, 557 A.2d 819 (Pa. Commw. Ct. 1989); Pidstawksi v. South Whitehall Twp., 380 A.2d 1322 (Pa. Commw. Ct. 1977). Thus, whether the taking involved bad faith and fraud has been specifically litigated and reviewed; it has been determined that there was no such action. (Doc. No. 19, Exhibit A at 13-14.) Therefore, Plaintiff is estopped from claiming once again that the RDA and York conspired for the purpose of getting his property for a lower price.

Contrary to Defendants' assertions, however, most of Plaintiff's claims depend on facts,

issues, and parties not present to the takings proceeding and thus cannot be covered by issue preclusion. Therefore, this Court will next proceed through the litany of other claims brought by Plaintiff, assessing the merits of each one in turn.

### B.     Malicious Prosecution

Plaintiff contends that Defendants Buffington, Wentz, and Redshaw engaged in malicious prosecution against him. Specifically, he claims that "[D]efendants Buffington and Redshaw . . . used their City authority to selectively and vindictively charge the plaintiff with . . . frivolous criminal citations carrying thousands of dollars in fines," and "Mr. Buffington and Mr. Wentz also worked together to bring frivolous criminal charges against the plaintiff which were summarily thrown out by D.J. Nixon." (Doc. No. 43 ¶ 10.)  Although Plaintiff was strongly encouraged to do so in the Court's previous order, Plaintiff still does not identify the date, the forum, or specifically what charges were involved in these "criminal charges."

The Court finds, as with the last complaint, that as a matter of law, these allegations fall short of what is required to state a viable § 1983 claim for malicious prosecution brought under the Fourth Amendment.  As the Third Circuit has recently explained, a Plaintiff bringing a Fourth Amendment malicious prosecution claim must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [Plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007); see also Backof v. New Jersey State Police, 92 F. App'x 852,

657-58 (3d Cir. 2004) (setting forth the minimal essential elements of a malicious prosecution claim and upholding dismissal of claim where, inter alia, no deprivation of liberty was alleged). As was the case in Plaintiff's original complaint, Plaintiff does not allege that he "suffered a deprivation of liberty consistent with the concept of a seizure" in the context of the alleged malicious prosecutions. Plaintiff merely alleges that the criminal citations carried 'thousands of dollars in fines." (Doc. No. 43 ¶ 10.) Plaintiff also does not allege an absence of probable cause for the criminal citations, which is required for a § 1983 or Bivens action for malicious or retaliatory prosecution. Hartman v. Moore, 547 U.S. 250, 246-60 (2006).

Plaintiff's allegation is inadequate to state a claim to support a finding of malicious prosecution under the Fourth Amendment and will be dismissed.

    **C.**    **Unlawful search and seizure**

The Court held that Plaintiff's first complaint alleged sufficient facts to survive 12(b)(6) scrutiny for a Fourth Amendment claim of unlawful search and seizure. (Doc. No. 34 at 5-6.) However, the Court also held that Plaintiff failed to provide adequate specificity as to the incident and Defendants involved so that they might have an opportunity to assess the applicability of qualified immunity. (Doc. No. 34 at 6.)

In this third attempt, Plaintiff adequately alleges a Fourth Amendment violation for unreasonable search and seizure against Defendant Wentz, the adequacy of which Defendant Wentz does not contest. (Doc. No. 46 at 3.) Plaintiff states that on May 28, 2005, Defendant Wentz, a City of York police officer, "broke into plaintiff's home without any warrant or reason, taking his firearms from him unlawfully." (Doc. No. 43 ¶ 10.) After Defendant Wentz "made off with plaintiff's firearms . . . Wentz chained the plaintiff to a table for approximately [three]

hours." (Doc. No. 43 ¶ 38-39.) In alleging that Defendant Wentz, a York City police officer, "broke into" his home and then chained him to a table for three hours without a warrant or other justification, Plaintiff alleges both that there was a seizure and that it was unreasonable in light of the surrounding circumstances. See, e.g., United States v. Sharpe, 470 U.S. 675, 682 (1985) ("The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures.") (emphasis in original). The Court finds that the allegation is sufficiently detailed so as to put Defendant Wentz on notice of the claim against him. Therefore, Plaintiff's claim of Fourth Amendment illegal search and seizure claim against Defendant Wentz remains.

### D.     First Amendment claims

In this Court's prior order dismissing Plaintiff's First Amendment claim for retaliation, the Court stated,

> Plaintiff's references to using legal process and opposing the efforts to take his property does not sufficiently identify what he actually did or when he engaged in protected activity. Additionally, beyond making vague allegations of Defendants' harassment at unspecified times, the complaint does not meaningfully identify which Defendants engaged in retaliation, what the objectionable conduct was, or how it related temporally or otherwise to Plaintiff's protected activity.

(Doc. No. 34 at 8.) Plaintiff once again generally alleges that "individual defendants all retaliated against the plaintiff because he chose to use legal process as a way to protect and extend his rights." (Doc. No. 43 ¶ 46(d).) However, Plaintiff more specifically alleges that Defendants Buffington and Wentz acted in retaliation by assessing Plaintiff excessive fines after he defended himself against other, similarly baseless fines. Plaintiff asserts that Defendant Buffington "charged plaintiff with 2000 more dollars [sic] of additional fines" after Plaintiff successfully

defended himself in court against several "unreasonable" fines. (Doc. No. 43 at 10.) Plaintiff cites a phone conversation to support his claim. In the conversation, Defendant Buffington called Defendant Wentz and allegedly asked him to look for violations on Plaintiff's property "because [Plaintiff] was causing some problems for the City.'" (Doc. No. 43 ¶¶ 19, 37, & 44.) The Court finds that the general allegation against all Defendants is unequivocally insufficient to state a claim for retaliation, but the particular allegation against Defendants Wentz and Buffington merit further consideration.

In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: "(1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (finding an allegation of retaliatory harassment and intimidation sufficient to survive a motion to dismiss) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

First, Plaintiff does properly allege a constitutionally protected right–redress of grievances through court proceedings. See, e.g., Crawford-El v. Britton, 523 U.S. 574 (1998), McKee v. Hart, 436 F.3d 165 (3d Cir. 2006). He claims Defendant Wentz assessed fines against him only because he was "causing problems for the city" by defending against prior fines. To meet the second prong, the effect of the Defendants' conduct "need not be great . . . but it must be more than *de minimis*." McKee, 436 F.3d at 170 (citations omitted). Plaintiff does not allege Buffington engaged in any action aside from a phone call requesting Wentz to investigate Plaintiff's property for violations. There was no allegation that Buffington requested Wentz to

bring unreasonable or unfounded violations against Plaintiff, and therefore no allegation that Buffington engaged in conduct sufficient to deter a person of ordinary firmness from a protected activity. Warranted citations are not only insufficient to be retaliatory, but are deemed beneficial to keep property from becoming "blighted" and to keep the community safe. If Buffington did bring purposefully unreasonable fines, Plaintiff still, however, must allege a causal connection between the additional fines and his defense of the prior fines in court. He only states that after he defended himself against fines, he received other fines. (Doc. No. 43 at 10.) Plaintiff does not indicate what violations the fines alleged, which of the fines were found "unreasonable," why Judge Kennedy called them unreasonable, when the phone call between Defendants Wentz and Buffington occurred, or when specifically the fines were awarded and the hearings took place (both the original set and the retaliatory set). In other words, though a third attempt, Plaintiff still falls short of providing the Court (and the Defendants) with the necessary information to find that the alleged conduct had more than a *di minimus* effect on Plaintiff, or that there was a causal connection between his court presence and the additional fines. As the Third Circuit has stated, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" (Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007)). Accordingly, Plaintiff's retaliation claim under the First Amendment is dismissed.

### E. Fourteenth Amendment claims for procedural and substantive due process violations

The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984). To properly allege a procedural due process claim, Plaintiff's complaint must demonstrate that he

was deprived of property without a hearing.  Plaintiff has not done so. As the Court stated in its previous order, "it would appear that Plaintiff received the legal process he was due." (Doc. No. 34.) The October 5, 2004, memorandum opinion of Judge Dorney reflects that Plaintiff was afforded legal process with respect to the taking of his property. He presented preliminary objections to the notice of taking, took depositions relating to those objections, and filed briefs in support of thereof, and then the Court of Common Pleas of York County ruled on these objections.  (Doc. No. 19, Exhibit A at 1-2.)  Additionally, since the filing of these pleadings, the Court has been notified that the eminent domain proceeding has proceeded to a conclusion, including payment to the Plaintiff Mann. (Doc. No. 58, Exhibit G.) Furthermore, Plaintiff was allowed, in his words "forced," to defend himself in the criminal courts regarding the various criminal and code violations "unlawfully" alleged against him. (Doc. No. 43 at 10.)  Thus, Plaintiff makes no allegations to support a claim that his procedural due process rights were infringed.

      Plaintiff also alleges that the entity and private Defendants all violated his Fourteenth Amendment substantive due process rights by "subject[ing him] to unequal and unauthorized mistreatment on a selective basis because of the defendants (sic) unlawful desire for his property." (Doc. No. 43 ¶ 46.)  This Fourteenth Amendment "substantive due process" claim sounds in equal protection, although Plaintiff makes no outright allegation. See, e.g., Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 813) (1996) ("The Equal Protection Clause 'prohibits selective enforcement of the law . . . .'") Plaintiff is, of course, estopped from claiming that the takings proceeding was a violation of due process, as it has already been found by Judge Dorney to be lawful. (Doc. No. 19 at 13-14.)  The

propriety of the taking has already been litigated and is subject to issue preclusion as discussed, *infra,* section A.

Issue preclusion notwithstanding, Plaintiff makes no attempt to articulate how he was subject to unequal treatment so as to put the Defendants on notice for a qualified immunity defense. He alleges no facts to indicate that he was treated differently, or disfavorably as compared to any other citizen. Plaintiff, for the third time, provides nothing more than a bald accusation, the vague allegation is not "enough to raise a right to relief above the speculative level," and therefore will be dismissed. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).

**F.     State law claims**

*1.     Intentional infliction of emotional distress*

Defendants contend that Plaintiff's complaint for intentional infliction of emotion distress must fail because he does not allege physical injury.  See Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994) ("[I]t is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury."); see also Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (reiterating the requirement that "plaintiff must suffer some type of resulting physical harm" to assert a claim for intentional infliction of emotional distress). Plaintiff asserts that Defendants knew he was "prone to severe pain and injury." (Doc No. 43 ¶ 4.) He also alleges a purposeful attempt by Defendants to drive him to emotional instability. (Doc No. 43, at 10.)  However, in no place does he allege physical harm or injury, or even an aggravation of his pre-existing condition.  Accordingly, Plaintiff's motion for intentional infliction of emotional distress is dismissed.

### 2. *Fraud*

Plaintiff asserts in his concluding paragraphs that he pled fraud with particularity. (Doc. No. 43, at 18.) In fact, Plaintiff's claim for fraud is as vague as, and perhaps less particularized than, many of his other claims. According to Federal Rule of Civil Procedure 9(b), "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Plaintiff has not met this burden. In fact, the complaint fails to state a claim for fraud altogether. Under Pennsylvania law, the essential elements of fraud are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

Plaintiff has failed to specify any misrepresentation made to him by any Defendant(s), how he relied on such representation, and his injuries caused therefrom. The only misrepresentation alleged in the complaint is that Defendant Redshaw, as a "dishonest and deceptive ruse," failed to attend an appointment with Plaintiff Mann to discuss minor repairs necessary to bring his property into compliance. Even if making an appointment and sending an "underling" in one's place were a misrepresentation, Plaintiff does not allege injuries therefrom. Plaintiff states no other misrepresentations made by any other Defendant. Thus, an allegation for fraud cannot be sustained on the pleadings. Accordingly, Plaintiff's claim for fraud is dismissed.

### 3. *Civil Conspiracy*

To adequately state a claim for civil conspiracy under Pennsylvania law, Plaintiff must

allege facts that demonstrate: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means, (2) an overt act in furtherance of the common purpose, and (3) actual legal damage." McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998). Additionally, proof of malice is an essential part of a civil conspiracy claim. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

Defendants argue that Plaintiff's conspiracy claim fails because he failed to allege an agreement. Plaintiff unequivocally, and with evidence of e-mail correspondence, alleges that there was an agreement among the Defendants. The difficulty lies in Plaintiff's vague and inconsistent reference to the terms and goals of that agreement. He states first that the agreement was "a plan to utilize unlawful methods to pressure the plaintiff into selling his properties" (Doc. No. 43 ¶ 7), he later states that the it was a conspiracy "to harm the plaintiff for the Mayor . . . [and] declar[e] plaintiff's property to be 'blighted'" (Doc. No. 43 ¶ 8), then, the plan extends to one "to harass and intimidate the plaintiff in violation of his federally guaranteed rights." (Doc. No. 43 ¶ 21.) Plaintiff is estopped from the first two iterations: alleging that there was a conspiracy to declare his property a "blight" in order to lower the value for the purposes of converting his private property to that of York College because that claim was litigated and denied in state court. (Doc. No. 19, Exhibit A.)

However, taking the vague claim of conspiracy in the light most favorable to the Plaintiff, one might construe Plaintiff's argument to be that the Defendants agreed to perform a lawful act (to acquire and sell Plaintiff's property to York College) by unlawful means (intimidation and harassment). (Doc. No. 43 ¶¶ 7-10, 21-26.) This claim would not be estopped due to the prior proceedings because the takings proceeding only determined that there was no

conspiracy or bad faith involved in declaring the property blighted and effectuating the taking. Judge Dorney does not determine or discuss whether a conspiracy existed to harass and intimidate the Plaintiff during the process leading up to the takings proceeding.

However, a cause of action for conspiracy will only lie where there is a valid underlying claim. See McKeeman v. Corestates, 751 A.2d 655 (Pa. Super. 2000) (quoting Pelagatti v. Cohen, 536 A.2d 1337, 1342 (1987) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). The Court is unable to find an underlying cause of action that can be support on Plaintiff's facts. As stated in section B, *infra*, Plaintiff does not state a valid claim for malicious prosecution under the Fourth Amendment. Although Plaintiff uses the word "harassment", the claim does not meet the definition of harassment under 18 Pa. Const. Stat. Ann. § 2709 or even duress or coercion consistent with 18 Pa. Const. Stat. Ann. § 2906. Accordingly, Plaintiff's civil conspiracy claim is denied.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendants' motions to dismiss Plaintiff's third amended complaint are granted. All claims are dismissed in this case as to all Defendants, except the allegation of illegal search and seizure under the Fourth Amendment by Defendant Wentz, which was not challenged in his motion to dismiss. An order commensurate with this opinion follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMMETT J. MANN,<br>  Plaintiff<br><br>v.<br><br>JOHN S. BRENNER, DAVE<br>REDSHAW, DON HOYT, ROBERT A.<br>KINSLEY, MATT JACKSON, CITY<br>OF YORK, YORK COLLEGE,<br>REDEVELOPMENT AUTHORITY<br>OF THE CITY OF YORK, STEVEN R.<br>BUFFINGTON, OFFICER WENTZ,<br>  Defendants | Civil Action No. 1:06-CV-1715<br><br>(Chief Judge Kane) |

## ORDER

**AND NOW**, this 30th day of September, 2008, upon consideration of Defendants' motions to dismiss and/or for a more definite statement (Doc. Nos. 44, 45, & 49), filed in the above-captioned matter, and for the reasons set forth in this Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's § 1983 claim for malicious prosecution in violation of the Fourth Amendment is **dismissed**;

2. Plaintiff's § 1983 claim that Defendants retaliated against him for exercising his First Amendment rights is **dismissed**;

3. Plaintiff's § 1983 claims that Defendants violated his procedural and substantive due process rights under the Fourteenth Amendment are **dismissed**;

4. Plaintiff's claim for intentional infliction of emotional distress is **dismissed**;

5. Plaintiff's claim for fraud under Pennsylvania law is **dismissed**;

6. Plaintiff's claim for civil conspiracy under Pennsylvania law is **dismissed**.

7. Plaintiff's § 1983 claim that Defendant Wentz violated the Fourth Amendment by unlawfully searching his property and seizing items of personal property is **not dismissed**.

                          S/ Yvette Kane
                          Yvette Kane, Chief Judge
                          United States District Court
                          Middle District of Pennsylvania